UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- X
```
                                  :

NIKOLAI MINASIAN and HARUTYUN    :
MINASIAN,                                 :

                          :

                 Plaintiffs,      :

                          :        14-cv-10125 (KBF)

            -v-                   :

                          :       <u>OPINION & ORDER</u>

IDS PROPERTY CASUALTY INSURANCE  :
COMPANY and STATE FARM FIRE AND   :
CASUALTY COMPANY,             :

                          :

                 Defendants.    :

                                    :
```
------------------------------------------------------------- X
```

KATHERINE B. FORREST, District Judge:

       Plaintiffs Nikolai Minasian ("Nikolai") and Harutyun Minasian ("Harutyun"),

son and father, respectively, brought this action alleging that their two insurers—

IDS Property Casualty Insurance Company (d/b/a Ameriprise Insurance Company)

("IDS") and State Farm Fire and Insurance Company ("State Farm")—have

breached their respective insurance contracts by failing to pay for losses incurred as

a result of an alleged burglary of plaintiffs' jewelry and cash at their residence.

       Pending before the Court are defendants' motions for summary judgment on

the sole ground that plaintiffs failed to give timely notice of their loss as required by

the three applicable insurance policies.  (ECF Nos. 37, 42.)  For the reasons set forth

below, defendants' motions are GRANTED in their entirety.  Accordingly, this

action is DISMISSED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 9, 2015

I.   FACTUAL BACKGROUND

A.   <u>Facts Relating to the Purported Theft</u>

Plaintiffs have alleged that they sustained a loss by theft from the insured premises at 240 Main Street, Apt. 11, Nyack, New York (the "Apartment"), on January 1, 2014.  (IDS's 56.1 ¶ 4.)[1]  Plaintiffs claim that the Apartment was burglarized and that jewelry consisting of two watches, two bracelets and two rings owned by plaintiffs and $1,150 cash were stolen from the Apartment.  (State Farm's 56.1 ¶¶ 4, 16-17.)  According to plaintiffs, they were given the jewelry by Harutyun's mother, which they brought with them on a return trip to the United States from Armenia on or about June 19, 2013.  (State Farm's 56.1 ¶ 10.)  Plaintiffs testified that they did not declare the jewelry at United States Customs when they brought it to the United States and do not have any documentation relating to the acquisition or purchase of the jewelry.  (State Farm's 56.1 ¶¶ 11-12.)

According to plaintiffs, Nikolai had three pieces of jewelry appraised in or about September 2013 as follows: a Gentleman's 18 Karat Yellow Gold Diamond

---

[1] The notation "IDS's 56.1" refers to IDS's statement of undisputed material facts, submitted under Local Rule 56.1.  (ECF No. 40-1.)  The notation "State Farm's 56.1" refers to State Farm's statement of undisputed material facts, submitted under Local Rule 56.1.  (ECF No. 46.)  This decision relies only on those facts plaintiffs did not dispute with citations to admissible evidence in their responses.  (ECF Nos. 60, 61.)  <u>See</u> Local Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  The notation "Pls.' 56.1 IDS Opp." refers to plaintiffs' counterstatement of undisputed material facts filed in response to IDS's 56.1 statement (ECF No. 61), and the notation "Pls.' 56.1 State Farm Opp." refers to plaintiffs' counterstatement of undisputed material facts filed in response to State Farm's 56.1 statement (ECF No. 60).

Plaintiffs do not dispute the authenticity, content or applicability of the insurance policy documents that defendants cited in their 56.1 statements and annexed as exhibits to their declarations.  (<u>See</u> IDS's 56.1 ¶¶ 1-2; State Farm's 56.1 ¶ 1.)  The Court therefore also considers the full contents of those policies in resolving the pending motions.

Ring, appraised at $40,500, a Gentlemen's 18 Karat Rose Gold Egona Swiss Chronograph Watch, appraised at $23,500, and a Gentlemen's 18 Karat Yellow Gold Diamond Bracelet, appraised at $33,000.  (State Farm's 56.1 ¶¶ 15-16.)  According to plaintiffs, Harutyun also had three (rather remarkably similar) pieces of jewelry appraised as follows: a Gentleman's 18 Karat Yellow Gold Rolex Style Diamond Ring, appraised at $47,300, a Gentlemen's 18 Karat Rose Gold Egona Swiss Chronograph Watch with an 18 Karat Rose Gold Bracelet, appraised at $23,000, and a Gentleman's 18 Karat Yellow Gold Rolex Style Diamond Bracelet, appraised at $23,100.  (State Farm's 56.1 ¶ 17.)  Plaintiffs rented a safe deposit box at J.P. Morgan Chase Bank to store the jewelry on or about October 31, 2013, where the jewelry remained until Nikolai retrieved it on December 31, 2013.  (State Farm's 56.1 ¶¶ 21-22.)  Nikolai testified that plaintiffs only intended to wear the jewelry during rare, special occasions, and that they removed the jewelry on December 31 to celebrate New Year's Eve.  (State Farm's 56.1 ¶¶ 23; IDS's 56.1 ¶ 16.)

Nikolai testified that plaintiffs' New Year's Eve plans were to stop by Nikolai's brother Michael's house and then go to Nikolai's girlfriend Anjelika Karakhanyan's house afterwards.  (State Farm's 56.1 ¶ 25.)  Nikolai testified that plaintiffs went to Michael's house in Nanuet, New York, to visit and retrieve some money that Michael owed Nikolai.  (State Farm's 56.1 ¶ 26.)  Nikolai testified that after visiting Michael's wife and two small children at Michael's house for a couple of hours, plaintiffs went to Anjelika's house in Riverdale, New Jersey, for the rest of the night.  (State Farm's 56.1 ¶¶ 27-28.)  Nikolai testified that Anjelika and her

3

daughter were the only other people at Anjelika's house that night, and that Anjelika's daughter fell and injured herself with a small cut on her right eye, which Harutyun, who had been a doctor in Armenia, treated. (State Farm's 56.1 ¶¶ 30-32.) Nikolai testified that he and Harutyun spent the night at Anjelika's house and left at or about 10:00 a.m. or 11:00 a.m. on New Year's Day.  (State Farm's 56.1 ¶ 34.) Nikolai testified that he went to the bank on New Year's Day to return the jewelry, but the bank was closed because of the holiday; Nikolai thereafter returned home with the jewelry and placed it in a desk drawer located in his bedroom on the second floor of the Apartment.  (State Farm's 56.1 ¶¶ 35-36.)

Nikolai testified that at approximately 1:00 p.m. that day he received a text message from Anjelika stating that she was taking her daughter to the hospital due to the cut on her eye; Nikolai testified that he and Harutyun left the Apartment at approximately 1:00 p.m. or 1:30 p.m. to go be with Anjelika and her daughter at the hospital.  (State Farm's 56.1 ¶¶ 37-38, 40.)  Nikolai testified that plaintiffs left the jewelry inside the Apartment while they went to the hospital, and that when they returned at approximately 6:25 p.m. or 6:30 p.m., they discovered that the Apartment had been burglarized and that the jewelry and $1,150 in cash (but nothing else) was stolen.  (State Farm's 56.1 ¶¶ 41, 43.)  Nikolai testified that he called the police, who arrived fifteen minutes after his discovery of the burglary. (State Farm's 56.1 ¶ 45.)  The Investigative Report of the Orangetown Police Department indicates that Detective Frank Buhler, along with a finger print unit of officers, responded to plaintiffs' call at approximately 6:45 p.m.  (Decl. of Dennis M.

4

Perlberg, Ex. 2 at 3, ECF No. 53; Pls.' Decl. ¶ 25, ECF No. 59.)[2]  Nikolai testified

that he spoke with the police a few times regarding the burglary after first

reporting the burglary.  (State Farm's 56.1 ¶ 48.)

B.    <u>Insurance Policy Provisions and Denial of Claims</u>

Plaintiffs allege that their losses were covered by three separate insurance

policies, one policy issued by IDS and two policies issued by State Farm.  Below, the

Court provides the relevant provisions of each policy and discusses defendants'

subsequent investigations (and rejections) of plaintiffs' claims.

1.    <u>IDS</u>

IDS issued its tenants policy ("Tenants Policy") of insurance for the

Apartment, Policy Number HI01904004, to plaintiffs for the policy period of

September 23, 2013 through September 23, 2014.  (IDS's 56.1 ¶ 1.)  The policy

included a document called "Tenants Form", which described the policy's coverage

as follows:

> We cover personal property owned or used by an **insured person** anywhere
> in the world.  Any personal property, which is usually at an **insured
> person's** residence other than the residence premises, is covered for up to
> 10% of the Personal Property Coverage limit but not less than $1,000.  This
> limitation does not apply to personal property in a newly acquired principal
> residence for the first 30 days after **you** begin to move the property there.

(Aff. of Alfred C. Polidore, Ex. A ("Tenants Form") at 2,[3] ECF No. 39-1.)  The policy

further stated that it covered "Theft or attempted theft, including loss of property

---

[2] The Court has serious doubts about the propriety of the submission of one joint declaration on
behalf of both plaintiffs.  There was no reason for both plaintiffs to file one declaration together.
Although the Court would be entitled to disregard plaintiffs' declaration on this basis, the Court
need not do so because defendants are entitled to summary judgment regardless of the weight given
to it.

from a known place if it is likely that a theft has occurred." (Tenants Form at 6.)

Under the "Optional Coverages" section, the policy stated that, for an additional

premium, jewelry included on a schedule (as to this policy, Harutyun's jewelry) is

also covered. (Tenants Form at 13-14.) The policy stated that, as to scheduled

jewelry, IDS "promise[s] to pay all direct and accidental losses to the personal

property . . . ." (Tenants Form at 15.) The policy also included the following

conditions for coverage:

> **What to do in Case of Loss**
>
> If a covered loss occurs, the Insured Person must:
> 1. give us notice as soon as reasonably possible. In case of theft, also notify the police. In case of loss under Credit Card, Charge Plate, Fund Transfer Card and Check Forgery Coverages, also notify the issuer of card or plate or the bank.
> 4. send to us, within 60 days after the notice of loss, the above list and a proof of loss signed and sworn to by the **insured person** . . .

(IDS's 56.1 ¶ 3; Tenants Form at 7.)

Plaintiffs did not give IDS notice of the loss until March 28, 2014, 86 days

after the purported burglary. (IDS's 56.1 ¶ 5.) By letter dated April 14, 2014, IDS

advised plaintiffs that further investigation was necessary before a coverage

decision could be made and specifically advised plaintiffs that the investigation of

the incident did not waive any of its rights or admit any obligations under the

policy. (IDS's 56.1 ¶ 7.) After plaintiffs' examinations under oath were twice

rescheduled, examinations of both plaintiffs were conducted on June 20, 2014.

(IDS's 56.1 ¶¶ 9-12.) As a result of its investigation, on September 19, 2014, IDS

---

[3] To prevent confusion, the Court here cites to the page numbers listed at the bottom of the Tenants Form itself, rather than the page numbers of Exhibit A as filed on ECF. The Court follows this same approach for State Farm's Renter's Policy.

disclaimed coverage for the January 1, 2014 loss on the grounds of fraud and failure to give timely notice.  (IDS's 56.1 ¶ 25.)

        2.   <u>State Farm</u>

On or about October 23, 2013, plaintiffs procured from State Farm a Renter's Policy ("Renter's Policy"), Policy No. 32-BW-F317-3, for the Apartment, as well as a Personal Articles Policy ("PAP Policy"), Policy No. 32-BW-F316-1, that specifically insured Nikolai's watch, bracelet and ring.  (State Farm's 56.1 ¶ 1.)  The Renter's Policy described its coverage as follows:

> We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, . . . :
> 9. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

(Decl. of Lee Ann Fink, Ex. 5 ("Renter's Policy") at 7, ECF No. 44-1.)  The Renter's Policy also included the following conditions:

> **2. Your Duties After Loss**.  After a loss to which this insurance may apply, you shall see that the following duties are performed:
> a. give immediate notice to us or our agent.  Also notify the police if the loss is caused by theft.  Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card.
> e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief: . . .

(State Farm's 56.1 ¶ 2; Renter's Policy at 11.)

The PAP Policy provided coverage for the classes of property listed in the "Personal Articles Schedule", which included Nikolai's three pieces of jewelry previously identified.  (Decl. of Lee Ann Fink, Ex. 6 ("PAP Policy") at 4, 12, ECF No. 44-2.)  The PAP Policy also included the following conditions:

**CONDITIONS**

7. **Your Duties After Loss.**  In case a covered loss occurs, you must:

b. report as soon as practicable in writing to us or our agent any loss or damage which may become a claim under this policy (in case of theft, the police are also to be notified); and

c. file with us or our agent, within 90 days after discovery of the loss, a signed sworn proof of loss.  This will state the facts and amount of the loss to the best of your knowledge.

(State Farm's 56.1 ¶ 3; PAP Policy at 14.)

Although the purported burglary happened on January 1, 2014, Nikolai testified that plaintiffs did not report the loss to State Farm until March 28, 2014, 86 days later.  (State Farm's 56.1 ¶ 52.)  Plaintiffs notified State Farm by submitting a claim under the PAP Policy via the internet for the loss of Nikolai's jewelry.  (State Farm's 56.1 ¶ 5.)  On March 31, 2014, plaintiffs first submitted a claim under the Renter's Policy to State Farm via telephone for the loss of $1,150 in cash due to the alleged burglary of the Apartment.  (State Farm's 56.1 ¶ 6.)

Although plaintiffs did not directly report the loss to State Farm until March 28, 2014, Detective Buhler testified that on January 2, 2014, he spoke with a State Farm agent, Eric Jaslow, about the fact that he was investigating a burglary at 240 Main Street and that the resident alleged that he had a renter's policy through State Farm.  (Pls.' 56.1 State Farm Opp. ¶ P1; Decl. of Dennis M. Perlberg, Ex. 1 ("Buhler Tr.") at 123, ECF No. 53.)[4]  Detective Buhler testified that he asked Jaslow if there was any documentation regarding the policy or an application to get a policy and if Jaslow could provide the policy, which he did.  (Buhler Tr. at 113-15, 123.)

---

[4] Detective Buhler also testified that certain actions he took as part of his investigation, including reaching out to State Farm, resulted from his suspicion that the burglary might have been staged to aid plaintiffs in committing insurance fraud.  (Buhler Tr. at 53-57, 67-71.)

Detective Buhler also testified that Detective Sergeant George Garrecht (Buhler's then-boss) called Jaslow's office on February 24, 2014, and spoke to Tammy, who said she would look into the case and would call back.  (Buhler Tr. at 116; see Decl. of Dennis M. Perlberg, Ex. 3 at 2, ECF No. 53.)  Detective Buhler also testified that he made weekly inquiries on Lead Online (a database of transactions involving the buying and selling of precious metals that precious metal dealers operating in Rockland County are required by law to use) involving plaintiffs or anyone that may have lived at 240 Main Street until he determined that the case was inactive, which he did in March 2014.  (Buhler Tr. at 77.)  Although Detective Buhler testified that he did not recall telling plaintiffs that he was going to be checking the Lead Online database and did not recall telling them that there was a likelihood or good chance of recovering the jewelry (Buhler Tr. at 103-04), in their joint declaration filed in opposition to defendants' summary judgment motions plaintiffs state that Detective Buhler told them that the police had a tracking system that would find plaintiffs' jewelry if it was received at a pawn shop or a gold and jewelry exchange, and that he had previously recovered jewelry thought to be lost in other burglaries using this system.  (Pls.' Decl. ¶ 26.)

On December 24, 2014, State Farm sent a letter to plaintiffs via their counsel disclaiming coverage for plaintiffs' claims based on, inter alia, plaintiffs' breach of the policies' notice conditions, plaintiffs' intentional concealment and misrepresentation of material facts or circumstances during the presentation of the

claim, the absence of an accidental direct physical loss, the theft exclusion and the fact that the loss involved an intentional act.  (State Farm's 56.1 ¶ 53.)

II.     PROCEDURAL HISTORY

Plaintiffs commenced this suit on December 24, 2014, by filing a complaint against IDS and State Farm alleging claims for breach of contract and violations of New York General Business Law § 349 and New York Insurance Law § 2601.  (ECF No. 1.)  Defendants answered the complaint (ECF Nos. 14, 31), but moved to dismiss the § 349 claims (ECF Nos. 10, 16).[5]  The Court granted those motions on April 17, 2015.  (ECF No. 29.)  On October 7, 2015 and October 9, 2015, IDS and State Farm respectively moved for summary judgment on the ground that plaintiffs failed to provide timely notice of their loss as required under the applicable insurance policies.  (ECF Nos. 37, 42.)  After defendants filed their reply briefs on November 6, 2015, and November 9, 2015 (ECF Nos. 62, 65), on November 10, 2015, the Court issued an Order that notified the parties that it intended to resolve this action on summary judgment, and as a result adjourned all remaining dates and deadlines until final resolution of the pending motions.  (ECF No. 67.)[6]

III.    LEGAL STANDARDS

A.     <u>Summary Judgment Standard</u>

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any

---

[5] Because IDS answered the complaint prior to filing its motion, the Court construed IDS's motion as one pursuant to Rule 12(c), rather than Rule 12(b)(6).  (ECF No. 20.)

[6] On November 10, 2015, the Court also denied plaintiffs' motion to file a sur-reply, but informed plaintiffs that it would consider their letter-motion seeking leave to file a sur-reply (which itself addressed the issue that plaintiffs wished to raise) as a sur-reply.  (ECF No. 68.)

material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of

a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

On summary judgment, the Court must "construe all evidence in the light most

favorable to the nonmoving party, drawing all inferences and resolving all

ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving

party's claims cannot be sustained, the opposing party must set out specific facts

showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield,

Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d

255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture

as to the true nature of the facts to overcome a motion for summary judgment,"

because "[m]ere conclusory allegations or denials . . . cannot by themselves create a

genuine issue of material fact where none would otherwise exist." Hicks v. Baines,

593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d

at 685 ("In seeking to show that there is a genuine issue of material fact for trial,

the non-moving party cannot rely on mere allegations, denials, conjectures or

conclusory statements, but must present affirmative and specific evidence showing

that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the

outcome of the suit under the governing law"—will properly preclude the entry of

summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see

also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986) (stating that the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts").  The Court should not

accept evidence presented by the nonmoving party that is so "blatantly contradicted

by the record . . . that no reasonable jury could believe it."  Scott v. Harris, 550 U.S.

372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)

("Incontrovertible evidence relied on by the moving party . . . should be credited by

the court on [a summary judgment] motion if it so utterly discredits the opposing

party's version that no reasonable juror could fail to believe the version advanced by

the moving party.").  "[F]actual issues created solely by an affidavit crafted to

oppose a summary judgment motion are not 'genuine' issues for trial."  Hayes v.

New York City Dep't of Corrs., 84 F.3d 614, 619 (2d Cir. 1996) (citing Perma

Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)).

     B.    Notice

Under New York law, which governs this diversity action, timely notice is a

condition precedent to coverage.  Am. Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435,

438 (2d Cir. 1995); see also White v. City of New York, 81 N.Y.2d 955, 957 (1993)

("The requirement that an insured notify its liability carrier of a potential claim 'as

soon as practicable' operates as a condition precedent to coverage.").  New York

courts have, on numerous occasions, ruled that an insured's inexcusable delay in

providing notice of a claim excuses the insurer's obligation to provide coverage.

E.g., Briggs Ave. LLC v. Ins. Corp. of Hannover, 11 N.Y.3d 377, 382 (2008).

"Where a policy of liability insurance requires that notice of an occurrence be given 'as soon as practicable,' such notice must be accorded the carrier within a reasonable period of time." Great Canal Realty Corp. v. Seneca Ins. Co., 5 N.Y.3d 742, 743 (2005); see also E. Baby Stores, Inc. v. Cent. Mut. Ins. Co., 337 F. App'x 10, 12 (2d Cir. 2009) (summary order) (same).  New York courts have routinely held that when an insurance policy requires notice to be provided as soon as practicable, delays of as little as one to four months were not within a reasonable period of time as a matter of law.  Am. Home Assur. Co. v. Republic Ins. Co., 984 F.2d 76, 78 (2d Cir. 1993) (36 day delay); Chicago Ins. Co. v. Halcond, 49 F. Supp. 2d 312, 320 (S.D.N.Y. 1999) (38 day delay); Deso v. London & Lancashire Indem. Co. of Am., 3 N.Y.2d 127, 131 (1957) (51 day delay); Avery & Avery, P.C. v. Am. Ins. Co., 51 A.D.3d 695, 697 (2d Dep't 2008) (four month delay); Evangelos Car Wash, Inc. v. Utica First Ins. Co., 45 A.D.3d 727, 727 (2d Dep't 2007) (three and a half month delay); Heydt Contracting Corp. v. Am. Home Assur. Co., 146 A.D.2d 497, 499 (1989) (four month delay); Power Auth. v. Westinghouse Elec. Corp., 117 A.D.2d 336, 342 (1st Dep't 1986) (53 day delay).  As to insurance policies requiring an insured to provide immediate notice, courts have held that delays of less than one month were untimely as a matter of law.  M.Z. Discount Clothing Corp. v. Meyninger, 23 F. Supp. 2d 270, 272 (E.D.N.Y. 1998) (10 day delay); Rushing v. Commercial Cas. Ins. Co., 251 N.Y. 302, 304 (1929) (22 day delay) (Cardozo, C.J.); Haas Tobacco Co. v. Am. Fid. Co., 226 N.Y. 343, 345 (1919) (10 day delay).

An untimely delay may be found inexcusable as a matter of law "when either no excuse is advanced or a proffered excuse is meritless." Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 287 (2d Cir. 2003) (quoting Olin Corp. v. Ins. Co. of N. Am., 966 F.2d 718, 724 (2d Cir. 1992)).  The insured bears the burden of showing any delay was excusable under the circumstances.  Id.; Security Mut. Ins. Co. v. Acker-Fitzsimmons Corp., 31 N.Y.2d 436, 441 (1972).

The test for determining whether a notice provision has been triggered in the first instance is "whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." Sparacino v. Pawtucket Mut. Ins. Co., 50 F.3d 141, 143 (2d Cir. 1995); see also Rockland Exposition, Inc. v. Great Am. Assur. Co., 746 F. Supp. 2d 528, 540 (S.D.N.Y. 2010) ("[W]here coverage is unclear, reasonable insurance-holders give notice.").  A good faith belief in non-liability is generally not a defense to a failure to provide notice of a claim.  Fairchild, 56 F.3d at 439; but see Reynolds Metal Co. v. Aetna Cas. & Sur. Co., 259 A.D.2d 195, 201 (3d Dep't 1999).  In the context of the question when notice of an occurrence is due, however, a good faith belief in non-liability may excuse some delay.  Argentina v. Otsego Mut. Fire Ins. Co., 86 N.Y.2d 748, 750 (1995); Reynolds, 259 A.D.2d at 199-200 ("[A]n insured's good-faith belief in non-liability, when reasonable under the circumstances, may excuse a delay in notifying an insurer of an occurrence or potential claim.").  Whether or not a policyholder has a good faith belief in non-liability is normally a question of fact.  Reynolds, 259 A.D.2d at 200; see also Argentina, 86 N.Y.2d at 750.

Each insurance policy imposes a separate contractual duty on the insured to provide notice.  Sorbara Constr. Corp. v. AIU Ins. Co., 11 N.Y.3d 805, 806 (2008).  The fact that an insurer may have actual notice from another source does not relieve the insured of its separate contractual obligation to provide notice.  See id.; Ocean Partners, LLC v. North River Ins. Co., 25 A.D.3d 514, 515 (1st Dep't 2006); Travelers Ins. Co. v. Volmar Constr. Co., 300 A.D.2d 40, 44 (1st Dep't 2002).  Thus, an insurer need not demonstrate prejudice to successfully invoke a defense of late notice.  See AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus., Inc., 84 F.3d 622, 624-25 (2d Cir. 1996); Briggs, 11 N.Y.3d at 382.

An insurer can waive—or be found to have waived—the notice provisions of its policy under certain circumstances.  For instance, waiver of the notice provision can occur if an insurer unequivocally and across the board denies any coverage obligation.  See Jacobson v. Metro. Prop. & Cas. Ins. Co., 672 F.3d 171, 176-78 (2d Cir. 2012); see also H.S. Equities, Inc. v. Hartford Acc. & Indem. Co., 661 F.2d 264, 270 (2d Cir. 1981).  If, however, an insurer has not categorically denied coverage, the insured must comply with notice requirements.  See Olin Corp. v. Ins. Co. of N. Am., 221 F.3d 307, 329 (2d Cir. 2000) (notice requirements were not waived, because the insurer never categorically denied the duty to indemnify).  An insured bears the burden of proving a denial of coverage by presenting sufficient facts that a trier of fact may determine whether and when such denial occurred.  Cf. Texaco A/S (Denmark) v. Commercial Ins. Co. of Newark, N.J., 160 F.3d 124, 129-30 (2d Cir.

1998) (a fact issue as to whether an insurer had denied coverage required reversal of summary judgment).

IV.   DISCUSSION

The sole ground upon which defendants seek summary judgment is that plaintiffs failed to comply with the timely notice requirements of the three applicable insurance policies.  For the reasons set forth below, the Court concludes that defendants were entitled to deny coverage because plaintiffs' provision of notice was untimely and their delay was inexcusable as a matter of law.

IDS's Tenants Policy required plaintiffs to give notice "as soon as reasonably possible" upon the occurrence of a covered loss.  (IDS's 56.1 ¶ 3; Tenants Form at 7.) State Farm's PAP Policy similarly provided that in the event of a covered loss plaintiffs were obligated to "report as soon as practicable in writing" to State Farm or its agent "any loss or damage which may become a claim."  (State Farm's 56.1 ¶ 3; PAP Policy at 14.)  State Farm's Renter's Policy imposed even stricter timing requirements, stating that plaintiffs were required to "give immediate notice" of a loss to which the policy applied to State Farm or its agent.  (State Farm's 56.1 ¶ 2; Renter's Policy at 11.)  Thus, all three policies imposed a duty upon plaintiffs to provide notice of a covered loss either as soon as practicable or reasonably possible, or immediately.  This meant that, as to the Tenants Policy and the PAP Policy, plaintiffs were required to provide notice "within a reasonable period of time," Great Canal Realty, 5 N.Y.3d at 743, and as to the Renter's Policy they were required to provide notice "immediately."

16

Plaintiffs do not dispute that they failed to provide defendants with notice of their potential claims until Friday, March 28, 2014, 86 days after the January 1, 2014 burglary of the Apartment.  (IDS's 56.1 ¶ 5; State Farm's 56.1 ¶ 52.)  As set forth above, numerous courts, interpreting the same "as soon as practicable" and "immediate notice" language used here, have found comparable—and oftentimes even shorter—delays to be untimely as a matter of law.  E.g., Am. Home Assur. Co., 984 F.2d at 78 (finding 36 day delay to be an unreasonable amount of time); M.Z. Discount Clothing, 23 F. Supp. 2d at 272 (finding 10 day delay untimely where policy required immediate notice).  Those cases did not enforce strict timing requirements simply to promote form over function.  Those decisions reflect the well-supported justification for a duty of timely notice, which is to allow the insurer an opportunity to promptly investigate so that it may protect itself from fraud, take early control of the direction in which a claim might lead, and provide for an adequate reserve fund.  Travelers Indem. Co. v. Northrop Grumman Corp., 3 F. Supp. 3d 79, 103 (S.D.N.Y. 2014); U.S. Underwriters Ins. Co. v. A & D Maja Const., Inc., 160 F. Supp. 2d 565, 568 (S.D.N.Y. 2001).

Furthermore, even if the weight of authority did not make clear that an unexcused 86 day delay is untimely as a matter of law, the surrounding contract language makes clear that initial notice was to be provided far more quickly than plaintiffs provided it here.  First, in the very same sentences in which the policies stated that plaintiffs had to provide notice to the insurer in the event of loss, all three provisions also stated that, if the loss was due to theft, plaintiffs also had to

notify the police.  (Tenants Form at 7; Renter's Policy at 7; PAP Policy at 14.)
Combining these two reporting obligations—to the insurer and the police—in one
provision suggests that the insured was expected to notify both the insurer and the
police of the theft at approximately the same time; no reasonable person would wait
86 days to report a known theft to the police, particularly if that person had any
hope of recovering the stolen property.

Second, IDS's Tenants Policy required plaintiffs to submit a signed, sworn
statement providing proof of loss within 60 days after notice of the loss, and State
Farm's Renter's Policy and PAP Policy required signed, sworn statements providing
proof of loss within "60 days after the loss" and "90 days after discovery of the loss",
respectively.  (Tenants Form at 7; Renter's Policy at 11; PAP Policy at 14.)  It is
unreasonable to interpret these policies as contemplating that initial notice is
timely when made 86 days after discovery of the loss given that plaintiffs were
required to submit sworn proof of loss within 60 or 90 days of discovery of the loss
(or, in the case of the Tenants Policy, just 60 days after providing notice of it).  See
Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1992) ("the entire contract
must be considered, and all parts of it reconciled, if possible, in order to avoid an
inconsistency"); see also Seabury Const. Corp. v. Jeffrey Chain Corp., 289 F.3d 63,
69 (2d Cir. 2002) ("[W]here two seemingly conflicting contract provisions reasonably
can be reconciled, a court is required to do so and to give both effect.").  Thus, if
plaintiffs cannot present a valid reason to excuse their 86-day delay, defendants are
entitled to judgment as a matter of law.  Briggs Ave., 11 N.Y. 3d at 382.

Plaintiffs offer several reasons why their notice was actually timely or why they were excused from providing timely notice.  As to all three policies, plaintiffs argue that their reporting obligations were not triggered until they subjectively believed that the police investigation had failed and the jewelry would not be recovered, and that any delay was reasonably excused because, inter alia, plaintiffs are unsophisticated, did not have counsel, had no prior experience with respect to reading or understanding insurance policy conditions, and Harutyun cannot read or write English.  Plaintiffs also argue that their delay should be excused as to State Farm because it suffered no prejudice from the delay, and that State Farm is not entitled to summary judgment as to the PAP Policy because the timely notice provision of that policy is ambiguous.  As explained below, plaintiffs' interpretations strain the plain meaning of the notice provisions and their excuses are insufficient to create a genuine issue of material fact.

First, plaintiffs assert that they gave timely notice under all three policies, arguing that their reporting obligations were not triggered until they subjectively realized that the stolen property would not be recovered; plaintiffs claim that they did not come to this realization until Detective Buhler "closed" the case file for the burglary in late March 2014.  (Pls.' Decl. ¶ 27.)  As stated above, a notice requirement in an insurance policy is triggered when "the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim."  Sparacino, 50 F.3d at 143 (emphasis added).  Courts have routinely rejected claims by plaintiffs that notice is triggered by their subjective

understanding of the availability of coverage.  See Pfeffer v. Harleysville Grp., Inc., 502 F. App'x 28, 30 (2d Cir. 2012) (summary order) ("When the insured indefinitely reserves to itself the determination of whether a particular loss falls within the scope of coverage it does so at its own risk." (quoting Power Auth. v. Westinghouse Elec. Corp., 117 A.D.2d 336, 343 (1st Dep't 1986)).[7]  Under New York law, a plaintiff is not excused from timely notice by his belief that the loss will be recovered or otherwise reimbursed elsewhere.

In light of the applicable standards, the Court easily rejects plaintiffs' interpretation of the notice provisions and their assertion that notice was timely. Plaintiffs do not dispute that they were aware that the Apartment had been burglarized and that the subject property had been stolen as of January 1, 2014. That awareness led plaintiffs to immediately contact the police.  Plaintiffs also do not dispute that they were aware that the policies covered losses arising from theft and that the policies pertained to the property (i.e. the six pieces of jewelry and cash) that was stolen.  No rational factfinder could find that a reasonable person, armed with that knowledge, would fail to understand that the facts suggested the possibility of claims under all three policies.[8]  Under New York law, plaintiffs adopted their "wait and see approach" at their own risk.

---

[7] Even in the absence of authority holding that notice is triggered based on what a reasonable person would have understood from the facts known to the insured at the time, it is illogical for the timeliness of notice to depend on an insured's subjective determination that stolen items would not be recovered; such a rule has no reasonable limit and would eviscerate the purpose and enforceability of a timely notice requirement.

[8] Plaintiffs' position is further undermined with respect to IDS's Tenants Policy, which specifically accounted for the possibility that the subject property could be recovered after IDS made payment to the insured.  (See Tenants Form at 8 (stating that in the event that property for which payment had

As for plaintiffs' purported mitigating factors (i.e. their lack of sophistication and experience with filing insurance claims), they have failed to provide any authority supporting the proposition that these reasons are sufficient to excuse late notice under the sort of circumstances at issue here.  Even if any of plaintiffs' asserted excuses could be viable as to certain types of insurance policies in certain circumstances, plaintiffs have failed to present a genuine issue of material fact that the circumstances here provided a reasonable excuse for their lengthy delay. Plaintiffs baldly assert their lack of sophistication and experience, yet the record shows that they were sophisticated enough to obtain appraisals, insurance coverage, safety deposit boxes, and specifically schedule the jewelry for coverage.  If plaintiffs were sophisticated enough to take each of these steps, they were certainly capable of providing timely notice to IDS and State Farm.

Finally, plaintiffs make two arguments that are solely applicable to State Farm—neither is convincing.  First, plaintiffs contend that State Farm is not entitled to summary judgment as to either the Renter's Policy or the PAP Policy on the ground that State Farm was not prejudiced by the delay of notice because Detective Buhler made State Farm aware of the theft on January 2, 2014.  (Pls.' 56.1 State Farm Opp. ¶ P1.)  Plaintiffs, however, mischaracterize the record.  In his deposition testimony, Detective Buhler stated only that he told Eric Jaslow that a burglary had occurred at 240 Main Street and that he asked Jaslow for copies of the renter's insurance policy for that premises; Detective Buhler did not indicate that

---

been made is recovered, the insured would have the option of keeping the property or keeping the monetary payment)).

he told Jaslow what, if any, items had been stolen and whether such property was covered by State Farm's policies.  (Buhler Tr. at 113-15, 123.)  Detective Buhler's testimony that Detective Sergeant Garrecht spoke to Tammy at State Farm on February 24, 2014, does nothing to suggest that State Farm had any additional information about the burglary at that time.  (Buhler Tr. at 116.)  Furthermore, even if Detective Buhler provided Jaslow with information that gave State Farm good reason to begin investigating any potential claim, New York law does not require an insurer to demonstrate prejudice to successfully invoke a late notice defense, see AXA Marine, 84 F.3d at 624-25; Briggs, 11 N.Y.3d at 382, nor is an insurer deemed to have received notice by learning of the occurrence from a third party, Ins. Co. of the State of Pennsylvania v. Argonaut Ins. Co., No. 12 CIV. 6494 DLC, 2013 WL 4005109, at *10 (S.D.N.Y. Aug. 6, 2013); Heydt Contracting, 146 A.D.2d at 499.  Plaintiffs fail to cite any authority for the proposition that the lack of prejudice is a mitigating factor that can itself create or support an excuse for late notice,[9] and the Court does not find it appropriate to create or invoke such a rule on these facts.

Plaintiffs next argue that State Farm is not entitled to summary judgment as to the PAP Policy on the ground that the phrase "In case a covered loss occurs" in the duty of notice provision is ambiguous.  They argue that when this "lead in language" is read in combination with the subsequent clause stating that plaintiffs

---

[9] Plaintiffs concede that New York Insurance Law § 3420, which does impose a prejudice requirement, applies only to policies insuring against claims by third parties for bodily injury and property damage, and not to first-party policies insuring against claims by the named insured.  N.Y. Ins. Law § 3420(a)(5).

were required to report "any loss or damage which may become a claim," the provision could reasonably be interpreted to mean that plaintiffs' notice obligation was not triggered until they were informed that their jewelry would not be recovered (i.e. when the police closed their active investigation of the burglary), rather than when they first learned of the burglary.

"In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." Cable Sci. Corp. v. Rochdale Vill., Inc., 920 F.2d 147, 151 (2d Cir. 1990) (quotation marks and alterations omitted). "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." United Air Lines, Inc. v. Ins. Co. of State of PA, 439 F.3d 128, 134 (2d Cir. 2006). "[T]he court should not find the contract ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) (quotation marks and alterations omitted); see also Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355 (1978) (An insurance contract is not ambiguous when "the words in the paragraphs of the policy under examination have a definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion.").

Here, plaintiffs' reading strains the plain meaning of the PAP Policy and there is nothing ambiguous about the duty of notice provision.  As with the IDS Tenants Policy and the State Farm Renter's Policy, the language in the PAP Policy clearly indicates that plaintiffs' duty to notify was triggered as soon as they learned that the jewelry was stolen on January 1, 2014.  Use of the term "covered loss" clearly connotes that property which is covered under the policy is no longer in the physical possession of the insured, and use of the phrase "loss . . . which may become a claim" indicates that an insured need not (and should not) wait until the loss has definitively ripened into a meritorious claim for payment.  No reasonable person could interpret this language to mean that a known theft of property only becomes a covered loss once the police cease to conduct an active investigation.  As discussed above, such an interpretation places no reasonable limit on the time by which an insured must provide notice of loss.  Finally, the Court notes that the lost jewelry was the only property covered by the PAP Policy; no reasonable person who has taken out an insurance policy solely to insure specified personal property would believe that the theft of such property would not be a loss covered by that policy.

## V.  CONCLUSION[10]

For the reasons set forth above, defendants' motions for summary judgment are GRANTED.

---

[10] The Court has considered plaintiffs' other arguments, and concludes that they are without merit.

The Clerk of Court is directed to close the motions at ECF Nos. 37 and 42, and to terminate this action.

SO ORDERED.

Dated:        New York, New York
              December 9, 2015

KATHERINE B. FORREST
United States District Judge